## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ZUMOBI, INC.,[1] | Case No. 19-12284 (KG) |
| Debtor. | |

## MOTION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO SECTIONS 105, 361, 362, 363(C), 364(C)(1), 364(C)(2), 364(D)(1), 364(E) AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION SECURED FINANCING FROM ESW CAPITAL, LLC; AND (B) PAY CERTAIN RELATED FEES AND CHARGES; AND (II) SCHEDULING A FINAL HEARING

Zumobi, Inc., as debtor and debtor-in-possession (the "**Debtor**"), files this motion (the "**Motion**")[2] for the entry of an financing order (the "**DIP Order**"), substantially in the form (interim) attached hereto as **Exhibit A**, (a) authorizing the Debtor to obtain post-petition financing (the "**DIP Financing**"); (b) granting liens and superpriority claims with respect to such post-petition financing; (c) modifying the automatic stay to the extent necessary to effectuate the terms and conditions of the DIP Order; and (d) granting related relief. In further support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]      The last four digits of the Debtor's federal tax identification number are 0014. The Debtor's registered agent's address is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Order.

2.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-1(b) and 4001-2.

## BACKGROUND

4.     On October 25, 2019 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing this bankruptcy case (the "**Chapter 11 Case**"). The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Case.

6.     The factual background regarding the Debtor, including its business operations, its capital and debt structures, and the events leading to the filing of this Chapter 11 Case, is set forth in detail in the *Declaration of Ken Willner in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "**Willner Declaration**") filed with the Court (the "**First Day Declaration**") and fully incorporated herein by reference.

**A. The ESW Plan and the DIP**

7.    As detailed in the Willner Declaration, after extensive good faith, arm's-length negotiations by and among the Debtor, the Noteholders and ESW Capital, LLC ("**ESW**"), the Debtor determined that it was in the best interest of the Debtor, its creditors and other parties-in-interest to seek confirmation of a plan of reorganization (the "**Plan**"), with ESW as the plan sponsor (the "**Plan Sponsor**").

8.    The Debtor has also filed the *Debtor's Motion for Entry of an Order (A) Authorizing the Debtor to Assume the Restructuring Support Agreement and (B) Granting Related Relief* (Docket No. 7) (the "**RSA Motion**").  Attached to the RSA Motion is the Restructuring and Support Agreement (the "**RSA**") detailing the binding terms and conditions, resulting from good faith, arms' length negotiations between the Debtor, the Noteholders, and ESW, to support the Debtor's restructuring process.

9.    The RSA also contemplates that ESW will fund up to $500,000 on a postpetition basis, in its capacity as a post-petition lender (the "**DIP Lender**"), to cover the operating and administrative expenses associated with preserving the Debtor's operations and running a chapter 11 process through a plan effective date.

10.    The Plan will provide substantial value to the Debtor and its estate.  Under the Plan as contemplated by the RSA, the Plan Sponsor will fund (i) $750,000 in cash consideration on the Effective Date, plus (ii) up to another $150,000[3] (the "**Consideration**").

---

[3]    The Plan Sponsor has agreed to leave behind the Debtor's accounts receivable and cash as reflected on the Debtor's balance sheet ("**Cash-on-Hand**") as of the Plan Effective Date for creditors, up to a maximum of $150,000. To the extent that Cash-on-Hand as of the Effective Date totals less than $150,000, the Plan Sponsor will fund additional cash under the Plan such that the total of Cash-on-Hand plus additional funded cash will equal $150,000, *provided* that at least this amount of cash remains available under the DIP Note as of the Effective Date.  Example 1: if the Debtor has $50,000 in Cash-on-Hand as of the Effective Date, and $200,000 remains undrawn under the DIP Note as of the Effective Date, the Plan Sponsor will fund $100,000 in additional cash under the Plan (such that Cash-on-Hand plus funded cash equals $150,000).  Example 2: if the Debtor has $50,000 in Cash-on-Hand as of the Effective Date, and $20,000 remains undrawn under the DIP Note as of the Effective Date, the Plan Sponsor will fund

11.     Moreover, the Debtor's Noteholders, who are owed in the aggregate amount of no less than $10,929,337 by the Debtor and would otherwise be entitled to share *pro rata* in recoveries to holders of allowed general unsecured claims, have agreed that they will share in such recoveries only after all allowed other general unsecured claims have first recovered a 30% recovery. Additionally, the DIP Lender has agreed that, subject to the occurrence of the Effective Date, the DIP Loan will not be repaid out of the Consideration.  Rather, the DIP Lender shall have the option, on account of being the holder of the DIP Lender claim (the "**DIP Lender Claim**"), to convert a portion of the outstanding allowed DIP Lender Claim into shares of equity of the reorganized Debtor ("**New Equity**") at a rate of 10% of the Allowed DIP Lender Claim for 60 shares of New Equity, up to a maximum of 100% of the Allowed DIP Lender Claim for 600 shares out of the total 1000 shares of New Equity (the "**Subscription Option**").  The remainder of the DIP Lender Claim, if any, after the DIP Lender's exercise of the Subscription Option, shall be repaid via the funding of additional consideration by Plan Sponsor or cancellation of such amounts advanced under the DIP.[4]

12.     This Motion seeks approval of the DIP Facility to fund ordinary course working capital needs and chapter 11 administrative expenses through the effective date of the Plan.  As set forth in the Willner Declaration, the DIP Facility represents the best source of financing available to the Debtor under the circumstances, and was negotiated at arm's length with the DIP Lender, resulting in terms that the Debtor submits are reasonable and appropriate to meet the Debtor's financing needs during the Chapter 11 Case.

---

$20,000 in additional cash under the Plan (such that Cash-on-Hand plus funded cash equals $70,000).  Example 3:  if the Debtor has 200,000 in Cash-on-Hand as of the Effective Date, then it will be permitted to keep $150,000 of that amount (from accounts receivable before cash), and it will not receive any additional cash from the Plan Sponsor.

[4]     For the avoidance of doubt, undrawn amounts under the DIP Note as of the Effective Date shall not comprise estate property, or be drawn by the Debtor for any purpose other than pursuant to the Budget.

13.     The Debtor has not been able to obtain an alternative financing commitment on terms better than those proposed by the DIP Lender.  Importantly, if the Debtor were to obtain an alternative source of financing other than the DIP Facility, ESW would be entitled to terminate the RSA to the detriment of estate stakeholders.

14.     Specifically, the DIP Facility provides for:

(a)     a multiple draw term loan credit facility of up to a maximum of $500,000 (the "**Stated Principal Amount**"), secured by a first priority lien on any and all pre- and post-petition property of the Debtor and/or its estate, whether existing on the Petition Date or thereafter acquired, except certain limited excluded assets; and

(b)     borrowings and disbursements to be made pursuant to the terms of the budget attached to the DIP Note as <u>Exhibit A</u> (as may be modified from time to time with the consent of the DIP Lender in its sole discretion, but without need for further Court order, the "**Budget**"), *provided, however,* that under no circumstance shall such borrowings and disbursements be for an amount in excess of the Stated Principal Amount.

## <u>TERMS AND CONDITIONS OF THE DIP FACILITY</u>

15.     The following chart contains a summary of the salient terms of the proposed DIP Facility, together with references to the applicable sections of the relevant source documents, in accordance with Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B) and Local Rule 4001-2.[5]

| Rule Citation | Summary of Material Terms |
|---|---|
| **Borrower**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Zumobi, Inc., as debtor and debtor-in-possession. *See* DIP Order, Preamble; DIP Note (attached as <u>Exhibit 1</u> to DIP Order), Preamble. |
| **DIP Lender**<br><br>Bankruptcy Rule 4001(c)(1)(B) | ESW Capital, LLC. *See* DIP Order at p. 2; DIP Note, Preamble. |

---

[5]     The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this Motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in this summary chart but not otherwise defined shall have the meanings ascribed to them in the DIP Order or the DIP Note as applicable.

| Rule Citation | Summary of Material Terms |
|---|---|
| **Commitment**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The DIP Facility shall include loans to be advanced and made available to the Debtor in the aggregate maximum principal amount of $500,000. *See* DIP Order, ¶ 1; DIP Note, Preamble. |
| **Term**<br><br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B)<br><br>Local 4001-2(a)(ii) | Except with respect to the payment of the Carve-Out (as defined herein), the DIP Lender's agreement to provide the DIP Financing in accordance with the DIP Documents shall immediately and automatically terminate (except as the DIP Lender may otherwise agree in writing in its sole discretion, subject to Paragraph 10 of the DIP Order), upon the earliest to occur of any of the following: (i) December 11, 2019; (ii) the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations; (iii) the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than DIP Lender under section 363 or 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in cash all of the DIP Obligations or unless such financing is subordinate to the DIP Obligations and consented to in writing by the DIP Lender; (iv) the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under chapter 7 of the Bankruptcy Code; (v) the DIP Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lender; (vi) the Effective Date of the Plan; or (vii) upon five (5) business days' written notice of any Event of Default. *See* DIP Order, ¶ 10. |
| **Use of Post-Petition Facility and Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(l)(B)(ii)<br><br>Local Rule 4001-2(a)(ii) | Unless otherwise agreed to by the DIP Lender, the Debtor shall use the proceeds of the DIP Facility solely for operating working capital purposes and chapter 11 administrative costs in the amounts and otherwise in accordance with and for the purposes provided for in the approved Budget.<br><br>Subject to the terms of the DIP Order, the Debtor shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Estate Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be due and payable, that constitute pre-Termination Date expenses and such payments shall not reduce or be deemed to reduce the post-Termination Date fees and expenses. |

| Rule Citation | Summary of Material Terms |
|---|---|
| | Nothing shall restrict the ability of any party to investigate or object to a disclosure statement or a plan of reorganization. The Carve-Out, proceeds from the DIP Financing and/or Cash Collateral may be used to pay approved fees and expenses of Estate Professionals employed by the Committee, if any, in connection therewith. *See* DIP Order, ¶¶ 3, 12; DIP Note § 3(a). |
| **Fees** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-2(a)(ii) | None. |
| **Interest Rates** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-2(a)(ii) | 4% per annum, provided the DIP Facility is not in default; 12% per annum upon default. *See* DIP Order, ¶ 7; DIP Note, § 2(a) & (b). |
| **Indemnification** Bankruptcy Rule 4001(b)(1)(B)(ix) | The Debtor agrees to indemnify, defend, and hold harmless the DIP Lender, each of its affiliates, and each of their respective officers, directors, employees, agents, advisors, attorneys, and representatives from and against all losses, claims, liabilities, damages, and expenses (including, without limitation, fees and expenses of counsels) for any actions, omissions, or events arising from or directly related to the DIP Facility, except to the extent resulting from the DIP Lender's gross negligence or willful misconduct. See DIP Order, ¶ 16. |
| **Conditions of Borrowing** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-2(a)(ii) | The obligation of the DIP Lender to make advances is subject to customary borrowing conditions and certain plan milestones, including: approval of the DIP Order (a) on an interim basis by October 30, 2019, and (b) on a final basis by November 29, 2019. *See* DIP Note, §§ 1(e), 4(a). |

| Rule Citation | Summary of Material Terms |
|---|---|
| **Budget**<br><br>Bankruptcy Rule 4001 (c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | A budget mutually agreed upon by the Debtor and the DIP Lender in an amount not to exceed $500,000, as may be modified from time to time by the Debtor with the consent of the DIP Lender in its sole discretion, but without need for further Court order.<br><br>*See* Budget attached to the DIP Note as Exhibit A; DIP Order, ¶ 6. |
| **Reporting Information**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001-2(a)(ii) | Standard or ordinary reporting requirements including, without limitation: (i) Budget related information; (ii) providing copies of, or access to, the Debtor's books and records and other information, and discussing with the DIP Lender the business and other matters relating to the Debtor; (iii) and providing notice of certain litigation and other proceedings. *See* DIP Note, §§ 1(b), 3. |
| **Variance Covenant**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001-2(a)(ii) | Notwithstanding the then applicable Budget, the Debtor may exceed the budgeted amount for each Budget line item during any weekly budget period by 10%, excluding any timing difference resulting from the roll forward of budgeted expenses from previous weekly periods that were unpaid and which may be rolled forward to subsequent periods, subject to certain other terms and conditions (a "**Permitted Variance**"); provided, that (i) the total amount of the DIP Loans do not exceed the Stated Principal Amount, and (ii) none of the proceeds of the DIP Loans shall be used by any party-in-interest to take any action or to otherwise assert any claims or causes of action against the DIP Lender in any capacity (except for the purposes of enforcement of the DIP Order or this DIP Note). *See* DIP Note, § 3(a). |
| **Chapter 11 Milestones**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The Debtor shall obtain orders from the Bankruptcy Court (a) conditionally or finally approving the Disclosure Statement by October 30, 2019, and (b) confirming the Plan by December 6, 2019, subject only to the Bankruptcy Court's docket. *See* DIP Order, ¶ 8; DIP Note, § 4(a). |
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001(c)(l)(B)(i) | <u>DIP Liens:</u><br><br>Pursuant to sections 364(c)(1) and 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtor or its estate, whether existing on the Petition |

| Rule Citation | Summary of Material Terms |
|---|---|
| Local Rule 4001-2(a)(i)(D) and (G), 4001- 2(a)(ii) | Date or thereafter acquired (collectively, "**Property**"), including, without limitation, any such encumbered cash of the Debtor and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, commercial tort claims, equity interests, and the proceeds of all the foregoing. For purposes of the DIP Order, the Property shall expressly exclude the proceeds of the Estate's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**") which shall not be subject to the DIP Liens, Superpriority Claims or any other liens or superpriority claims. |

Pursuant to section 364(d)(1), the DIP Liens shall prime any prepetition liens of Silicon Valley Bank ("**SVB**"), which on information and belief, were intended to be terminated by SVB as the obligations being secured by such liens have been satisfied in full.

The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Estate under section 551 of the Bankruptcy Code, or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor to the extent permitted by applicable non-bankruptcy law.

*See* DIP Order, ¶¶ 14-15; DIP Note, § 5.

DIP Superpriority Claim:

Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against the Debtor (the "**Superpriority Claims**") with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the estate, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may

| Rule Citation | Summary of Material Terms |
|---|---|
| | become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, excluding, however, the proceeds of all Avoidance Actions, subject only to the Carve-Out to the extent specifically provided for herein.<br><br>*See* DIP Order, ¶ 11. |
| **Repayment and Prepayment** | The DIP Lender's claim on account of the DIP Obligations shall be allowed in full under the Plan. The DIP Lender shall have the right, on account of being the holder of the DIP Lender Claim, to exercise the Subscription Option.  Further, the DIP Lender, on account of being the holder of the allowed DIP Lender Claim, shall receive, payment in Cash of the remaining amount of the allowed DIP Lender Claim after the DIP Lender has exercised the Subscription Option to receive its share of the equity of the reorganized debtor; provided that the plan sponsor and the DIP Lender, to the extent they are both the same entity, may agree to satisfy the allowed DIP Lender Claim without having to fund actual Cash from the Plan Sponsor to the DIP Lender. The DIP Lender Claim shall be repaid by a combination of the Subscription Option (which shall reduce amounts owing under the DIP Note on a dollar-for-dollar basis), the funding of additional consideration by Plan Sponsor or cancellation of such amounts advanced under the DIP.<br><br>Draws against the DIP Facility cannot be prepaid in any amount.<br><br>*See* DIP Order, ¶ 11, DIP Note ¶ 2(e)-(f). |
| **Carve Out**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(f) | The liens and claims of or granted to the DIP Lender shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**"): (a) all allowed fees and expenses of attorneys, investment bankers and financial advisors (collectively, the "**Estate Professionals**") employed by the Estate or the Debtor pursuant to sections 327 and 328 of the Bankruptcy Code which are accrued prior to the Termination Date to the extent set forth in (and limited by) the Budget, in each case, are accrued prior to the Termination Date (i) solely to the extent set forth in (and limited by) the Budget plus (ii) up to an additional aggregate amount of $25,000 to be shared by the Estate Professionals (and to fund any operations) after the Termination Date (the "**Carve-Out** |

| Rule Citation | Summary of Material Terms |
|---|---|
| | **Amount**"); and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Court or to the Debtor's appointed claims agent. The DIP Lender will fund the Carve-Out Amount to the Debtor as needed to pay any fees and expenses of Estate Professionals that the Debtor is authorized to pay pursuant to an interim compensation or other order entered by the Court. *See* DIP Order, ¶ 12.<br><br>Notwithstanding the foregoing, none of the Carve-Out, proceeds from the DIP Financing or Cash Collateral may be used (a) to investigate or challenge in any respect the validity, perfection, priority, extent or enforceability of the DIP Liens, (b) to delay, challenge or impede any rights of the DIP Lender under any of the DIP Documents or the DIP Order, or (c) to pursue any claims or causes of action of any kind against the DIP Lender (except for purposes of enforcement of the DIP Order or the DIP Note). See DIP Order, ¶ 13.<br><br>Nothing herein shall restrict the ability of any other party to investigate or object to a disclosure statement or a plan of reorganization, and the Carve-Out, proceeds from the DIP Financing may be used to pay approved fees and expenses of Estate Professionals employed by the Committee, if any, in connection therewith. *See* DIP Order, ¶ 13. |
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001-2(a)(ii) | Events of Default.  Usual and customary for financings of this type, including, without limitation, non-payment of principal and interest, defaults under affirmative and negative covenants and breaches of representations and warranties. The Debtor's failure to satisfy any of the case milestones set forth in the DIP Order and DIP Note (as discussed above) would also constitute an Event of Default thereunder. Additionally, certain actions, if taken, or pleadings, if filed, would constitute an Event of Default. *See* DIP Order ¶ 8.<br><br>Remedies.  Upon the occurrence of an Event of Default and after five (5) business days' written notice by the DIP Lender to the Notice Parties (the "**Default Notice Period**"), the automatic stay shall terminate, and the DIP Lender shall be permitted to exercise any remedies permitted by law, including any of the following actions, unless the Court determines during the Default Notice Period that an Event of Default has not occurred: (i) declare all or any portion of the outstanding DIP Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Debtor; (ii) enforce all liens and security interests in the DIP Collateral ; (iii) institute proceedings to enforce payment of such DIP Obligations |

| Rule Citation | Summary of Material Terms |
|---|---|
| | ; (iv) terminate the obligation of the DIP Lender to make Loans; and (v) exercise any other remedies and take any other actions available to it at law, in equity, under the DIP Note, , the Bankruptcy Code, other applicable law or pursuant to the DIP Order; provided, however, that the DIP Lender shall continue to fund the Debtor's operations, pursuant to the Budget, through the Default Notice Period.  Notwithstanding the foregoing, the DIP Lender, on or after November 2, 2019, shall be permitted to terminate its obligation to make Loans if the Debtor fails to cause new, properly authorized termination statements with respect to the extant liens of SVB to be recorded by the Secretary of State for the State of Delaware by November 1, 2019.  *See* DIP Order ¶ 9. |
| **Waiver / Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | The automatic stay shall be modified to the extent necessary to permit the DIP Lender to exercise its remedies in accordance with the terms of the DIP Order and DIP Documents, including subject to any notice requirements set forth therein. *See* DIP Order ¶¶ 9, 15.<br><br>Notwithstanding the provisions of section 362 of the Bankruptcy Code, (i) the DIP Lender, may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender may require, and (ii) the DIP Lender may require the Debtor to deliver to the DIP Lender, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor shall cooperate and comply therewith.  *See* DIP Order ¶ 15. |
| **Waiver / Modification of Applicability of Non- bankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) | The DIP Liens shall be effective and perfected upon the date the DIP Order is entered and without the necessity of the execution, recordation or filing by the Debtor or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of or over any DIP Collateral. *See* DIP Order, ¶ 15.<br><br>The DIP Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of section 362 of the Bankruptcy Code, (i) the DIP Lender, may, at its sole option, file |

11327705/1

| Rule Citation | Summary of Material Terms |
|---|---|
| | or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lender may require, and (ii) the DIP Lender may require the Debtor to deliver to the DIP Lender, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor shall cooperate and comply therewith. If the DIP Lender shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages, amendments to mortgages or other documents or instruments with respect to such security interests and liens, or if the DIP Lender, in accordance with the DIP Documents or the DIP Order, elects to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements, mortgages, amendments to mortgages or similar documents or instruments or taking possession shall be deemed to have been filed or recorded or taken in the Chapter 11 Case as of the commencement of the Chapter 11 Case but with the priorities as set forth herein. The DIP Lender may, but shall not be required to, file a certified copy of the DIP Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall constitute further evidence of the DIP Lender's interest in the DIP Collateral.

*See* DIP Order, ¶ 15; DIP Note, §§ 5(d), (f). |
| **Liens on Avoidance Actions**

Bankruptcy Rule 4001(c)(l)(B)(xi)

Local Rule 4001-2(a)(i)(D) | None. See DIP Order, ¶ 14. |
| **Credit Bid Rights**

Bankruptcy Rule 4001(c)(l)(B)

Local Rule 4001-2(a)(ii) | Subject to section 363(k) of the Bankruptcy Code and entry of the DIP Order, the DIP Lender shall have the right to "credit bid" the full amount of its claims in connection with any sale of all or any portion of the Debtor's assets, including, without limitation, a sale transaction under section 363 of the Bankruptcy Code or included as part of any alternative restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code. *See* DIP Order ¶ 22. |

| Rule Citation | Summary of Material Terms |
|---|---|
| | |
| **No Priming or Pari Passu Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | No claim or lien having a priority superior to or pari passu with those granted by the DIP Order to the DIP Lender shall be granted or allowed until the occurrence of (i) the payment in full in cash or immediately available funds of all of the DIP Obligations, (ii) the termination or expiration of all commitments to extend credit to the Debtor under the DIP Documents, and (iii) the cash collateralization in respect of any asserted claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which the DIP Lender may be entitled to indemnification by the Debtor ("**Paid in Full**"). While any portion of the DIP Financing (or any refinancing thereof), the DIP Obligations remain outstanding and the commitments thereunder have not been terminated, the DIP Liens shall not be (x) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (y) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.<br><br>*See* DIP Order ¶ 17; DIP Note, § 5(g). |

16.     Solely out of the abundance of caution and solely for the period between entry of the Interim DIP Order and the entry of the Final DIP Order (or earlier Termination Date), the Debtor requests that the Court authorize the priming of prepetition liens (the "**SVB Liens**") held by the Debtor's former prepetition lender, Silicon Valley Bank ("**SVB**").

17.     As detailed in the Willner Declaration, in February 2011, the Debtor entered into a Loan and Security Agreement, as subsequently amended, with SVB, in which SVB provided a term loan and revolving line of credit secured by all or substantially all of the Debtor's assets in the amount of $1.5 million.  On or about May 12, 2015, any and all amounts owed to SVB were paid so that SVB released all interests in the Debtor's property.  As a result of payment of the amounts owed to SVB, the Debtor has no secured debt as of the Petition Date.  SVB's release of its security interest in the Debtor's assets is evidenced by two termination statements recorded

with the Secretary of State for the State of Delaware, true and accurate copies of Secretary of State certificates relating thereto are attached hereto as **Exhibit B**.  Recently (well after the recording of the two termination statements) and apparently in error, two UCC continuation statements with reference to the original financing statements were filed erroneously against the Debtor by or on behalf of SVB.

18.     The Debtor is in the process of rectifying this error by filing or procuring UCC terminations with respect to the erroneous SVB continuation filings, and upon information and belief, SVB does not oppose such action.  Nonetheless, the liens remain on file as of the date hereof.  Given the confusing filings, the DIP Lender is unwilling to provide the DIP Financing without assurances that its DIP Liens will be senior to the SVB Liens and requires an order on an interim basis through entry of the Final DIP Order (or earlier Termination) priming the SVB Liens (if they even exist) pursuant to section 364(d)(1) of the Bankruptcy Code.  In the interim, the Debtor will endeavor to cause new termination statements authorized by SVB to be recorded by the Secretary of State for the State of Delaware, terminating the SVB Liens, and the Debtor's failure to do so by November 1, 2019 will result in an Event of Default and termination of the DIP Financing, if the DIP Lender so elects.  Notice of this Motion is being served on SVB.

## RELIEF REQUESTED

19.     The Debtor seeks entry of the DIP Order:

(a)     authorizing the Debtor to enter into the secured DIP Facility, which shall include loans to be advanced and made available to the Debtor, up to a maximum of $500,000, including up to $260,000 on an interim basis (subject to the terms of the DIP Documents);

(b)     ordering that, subject to the Carve-Out, in all respects, all obligations of the Debtor to the DIP Lender under the DIP Documents shall be:

(i)     entitled to superpriority claim status under section 364(c)(1) of the Bankruptcy Code, with priority over all administrative expense

11327705/1

claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code; and

(ii)    secured, pursuant to section 364(c)(1) and (c)(2) of the Bankruptcy Code, by a first priority lien on all of the pre- and post-petition property of the Debtor whether existing on the Petition Date or thereafter acquired (excluding avoidance actions);

(iii)    for the period between entry of the Interim DIP Order and entry of the Final DIP Order (or earlier Termination Date), senior to the SVB Liens pursuant to section 364(d)(1) of the Bankruptcy Code;

(c)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Order, as applicable; and

(d)    granting related relief.

## THE DEBTOR HAS AN IMMEDIATE NEED FOR CASH

20.    The Debtor proposes to use the proceeds of the DIP Facility to, among other things, to fund the Debtor's operations and the administration of this Chapter 11 Case in order to effectuate the restructuring contemplated in the Plan. Without access to the DIP Facility to satisfy these obligations, the Debtor will have insufficient funds to continue to administer its estate and exit the Chapter 11 Case. Thus, the Debtor's access to the DIP Facility will facilitate its efforts to maximize value of the Debtor's estate for its creditors through confirmation of the proposed Plan.

## ALTERNATIVE SOURCES OF FINANCING ARE NOT READILY AVAILABLE

21.    The Debtor does not believe that alternative sources of significant financing are readily available. In addition, the Debtor does not believe it would be prudent, or even possible, to administer the Chapter 11 Case on a "cash collateral" basis. Without access to the DIP Facility, the Debtor has less than $10,000 cash on hand, and will be unable to generate sufficient levels of cash flow through operation of the Debtor's business to cover cash needs and the projected costs of the Chapter 11 Case. In addition, even if the Debtor could secure an alternative source of financing, consummating such financing would result in a failure of the Plan's conditions to

confirmation and effectiveness, thereby causing a loss of the substantial consideration pledged to the Debtor's estate thereunder. This result would cause a severe hardship to the Debtor and its stakeholders.

22.     In sum, the Debtor believes that, given the realities of the current circumstances of its Chapter 11 Case, the proposed DIP Facility represents the best (and likely only) option available to address the Debtor's immediate liquidity needs. It is the product of extensive arm's length negotiations with ESW and is an essential component of effectuating the restructuring contemplated in the Plan.

## **BASIS FOR RELIEF**

### **A. The Debtor Should Be Authorized to Obtain DIP Financing Through the DIP Facility.**

#### **i.     Entering Into the DIP Facility Is an Exercise of the Debtor's Sound Business Judgment.**

23.     The Court should authorize the Debtor, as an exercise of its sound business judgment, to enter into the DIP Documents and obtain access to the DIP Facility. Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below.  Courts grant a debtor considerable deference in acting in accordance with its business judgment in obtaining post-petition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a [trustee] in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds

17

that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest.").

24.     Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.,* 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a trustee's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of the trustee's authority under the [Bankruptcy] Code").

25.     Furthermore, in considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the estate and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (recognizing a trustee may have to enter into "hard bargains" to acquire funds for a reorganization of the estate). The Court may also appropriately take into consideration non-economic benefits to an estate offered by a proposed post-petition facility. For example, in *In re ION Media Networks. Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtor and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including non economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization*. This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a

> vital part of building support for a restructuring that ultimately may lead to
> a confirmable reorganization plan. That which helps foster consensus may
> be preferable to a notionally better transaction that carries the risk of
> promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

26.     The Debtor's determination to move forward with the DIP Facility is an exercise of the Debtor's sound business judgment following an arm's length process and careful evaluation of alternatives.  Specifically, the Debtor requires post-petition financing to fund the Debtor's working capital needs and the administrative expenses of the chapter 11 process.  The terms of the DIP Facility are advantageous to the Debtor, including four (4%) percent interest (except in the case of Debtor's default).  Further, the DIP Facility funds the Chapter 11 Case as contemplated under the RSA.  In addition, the Debtor took into account that entering into alternative financing would result in a failure of the Plan's conditions to confirmation and effectiveness, to the severe detriment of the Debtor's stakeholders.  Accordingly, the Debtor negotiated the DIP Documents with the DIP Lender in good faith, at arm's length, and with the assistance of its advisors, and the Debtor believes that it has obtained the best financing available under the circumstances.

### ii.     The Debtor Should Be Authorized to Obtain DIP Financing on a Secured and Superpriority Basis.

27.     The Debtor proposes to obtain financing under the DIP Facility by providing security interests and liens as set forth above pursuant to section 364(c) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of the [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

28.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

(a)     the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim;

(b)     the credit transaction is necessary to preserve the assets of the estate; and

(c)     the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*In re Ames Dep't Stores*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hosp.*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

29.     Based on current capital market conditions, after consultation with its advisors, the Debtor determined that post-petition financing on an unsecured basis would be unobtainable. Without the DIP Facility, the Debtor will not be able to preserve and maximize the value of the Debtor's estate. Absent sufficient financing to operate the business during the Chapter 11 Case and consummate the Plan, the value of the Debtor's estate would be substantially impaired to the detriment of all stakeholders. Given the Debtor's circumstances, the Debtor believes that the terms of the DIP Facility are fair, reasonable, and adequate, all as more fully set forth below.

30.     In the event that a debtor is unable to obtain unsecured credit, section 364(c)(1) of the Bankruptcy Code provides that the debtor may obtain credit that is secured by an administrative expense claim having priority "over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]." As described above, the Debtor is unable to obtain unsecured credit. Therefore, approving the Superpriority Claim in favor of the DIP Lender is reasonable and appropriate.

31.     As set forth above, out of the abundance of caution, given what are believed to be erroneous recent filings by or on behalf of the Debtor' former prepetition lender, SVB, with the Secretary of State for the State of Delaware, the DIP Lender and Debtor request that the DIP

Lender be granted priming liens, senior to the SVB Liens (if any exist) pursuant to section 364(d)(1) of the Bankruptcy Code. Such priming liens are granted only for the period between entry of the Interim DIP Order and entry of the Final DIP Order (or earlier Termination Date). Moreover, the Debtor submits that SVB is adequately protected because the Debtor has no outstanding obligations to SVB and therefore, SVB does not have any lien entitled to protection.

32.    The security interests and liens requested herein are appropriate under sections 364(c)(1), 364(c)(2) and 364(d)(1) of the Bankruptcy Code because, among other things, the security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtor's estate.

### iii. No Comparable Alternative to the DIP Facility Is Reasonably Available.

33.    In satisfying the standards of section 364(c) of the Bankruptcy Code, a debtor need not seek credit from every available source, but needs only to demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor's estate, "it would be unrealistic and unnecessary to require the trustee to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989). Generally, a debtor's efforts are to be considered on a case by case basis, particularly "[g]iven the 'time is of the essence' nature of this type of financing." *In Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). *See also In re Sky Valley, Inc.*, 100 B.R. at 112-

13 (exhaustive search not required where the business suffered from financial stress, had little or no unencumbered property, and primary property was subject to numerous liens, and thus debtors' approach of only four lenders was sufficient under such circumstances).

34.    In light of the advantageous terms of the Plan, the Debtor does not believe that alternative sources of sufficient financing are reasonably available.  Thus, the Debtor has determined that the DIP Facility provides the best option under the circumstances to both fund the Chapter 11 Case and bridge the gap until confirmation of the Plan. Therefore, the Debtor submits that the requirements of sections 364 of the Bankruptcy Code are satisfied.

**B.  The DIP Lender Should Be Deemed a Good-Faith Lender under Section 364(e).**

35.    Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor's estate, and its right in any lien securing those loans, even if the authority of the trustee to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

36.    As explained herein, the DIP Facility is the result of the Debtor's reasonable and informed determination that the DIP Lender offered the most favorable terms on which to obtain needed post-petition financing, and of arm's length, good-faith negotiations between the Debtor and the DIP Lender.  The terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code.  Further, no consideration is being provided to any

11327705/1

party to the DIP Facility other than as described herein.  Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section.

### C. The Automatic Stay Should Be Modified on a Limited Basis.

37.    The Debtor requests that the automatic stay imposed by section 362 of the Bankruptcy Code be modified to the extent necessary to implement and effectuate the terms and provisions of the DIP Order, as applicable. Among other things, the proposed DIP Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified, to the extent necessary, to permit the DIP Lender to exercise certain remedies if an Event of Default occurs and is called by the DIP Lender.

38.    Similar stay modifications are commonplace and standard features of post-petition financing arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this Chapter 11 Case. *See, e.g., In re Peak Broad., LLC*, No. 12¬10183 (PJW) (Bankr. D. Del. Feb. 2, 2012) (terminating automatic stay after occurrence of termination event); *In re TMP Directional Mktg., LLC*, No. 11-13835 (MFW) (Bankr. D. Del. Jan. 17, 2012) (modifying automatic stay as necessary to effectuate the terms of the order); *In re Broadway 401 LLC*, No. 10-10070 (KJC) (Bankr. D. Del. Feb. 16, 2010) (same); *In re Haights Cross Commc'ns, Inc.*, No. 10-10062 (BLS) (Bankr. D. Del. Feb. 8, 2010) (same).

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

39.    To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

11327705/1

## NOTICE

40.     The Debtor will provide notice of this motion to:  (a) the U. S. Trustee for Region 3; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Noteholders; (d) counsel to the proposed Plan Sponsor; (e) the Internal Revenue Service; and (f) Silicon Valley Bank.  As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Rule 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is needed or required.

WHEREFORE, the Debtor respectfully requests that the Court enter the DIP Order, substantially in the form attached hereto as **Exhibit A**, grant the relief requested herein, and grant such other relief as is just and proper.

Dated:  October 27, 2019

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Jeffrey R. Waxman (DE Bar. No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: jwaxman@morrisjames.com
Email: emonzo@morrisjames.com
Email: bkeilson@morrisjames.com

*Proposed Counsel to the Debtor and
Debtor in Possession*

11327705/1