# EXHIBIT A



**ORIGINAL**

**PROGRAM AGREEMENT**

Agreement # 603-0010967-000

Supplier: COPIERS NORTHWEST (Full Legal Name)
601 DEXTER AVE. NORTH (Street Address)
SEATTLE (City)  WA (State)  98019 (Zip)  KING (County)

Customer: ZUMOBI (Full Legal Name)
1525 4th Ave Suite 800 (Street Address)
SEATTLE (City)  WA (State)  98101 (Zip)  KING (County)

**PLEASE CHECK ONE:**  ☐ Per Machine Minimum  ☐ Consolidated Minimum

| Make / Model / Accessories | Serial Number | Minimum Number of Impressions | Minimum Monthly Payment | Excess Per Copy Charge |
|---|---|---|---|---|
| 1. LEXMARK XM 3150 MFP | | | 145.00 | |
| 2. | | 1,000 | | $0.0154 |
| 3. | | | | |

Color Print Controller Extended Warranty: ☐ Yes  ☐ No    TOTALS:    $145.00

**TRANSACTION TERMS:**
Term 24 Months

1 MONTH ADVANCE PAYMENT: $ WAIVED
(plus applicable taxes)

METER READING PREFERENCE (monthly if not checked) ☐ Quarterly  ☐ Other (____)

Equipment Location: ____  City: ____  State: ____  Zip: ____
(if different from Customer address above)

Customer Contact: CAITLIN PASS    Telephone: 206.515.7601    Email: caitlin.pass@zumobi.com

We have written this Agreement in plain language because we want you to understand its terms. Please read your copy of this Agreement carefully and feel free to ask us any questions you may have. The word "Agreement" means this FlexPlan Program Agreement. The words "you" and "your" mean the Customer named above. The words "we", "us", and "our" refer to the Owner named below. The abbreviation "CNW" refers to Copiers Northwest, Inc.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT (INCLUDING THOSE ON THE REVERSE SIDE) SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. TERMS OR ORAL PROMISES WHICH ARE NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY NOT BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT BETWEEN YOU AND US. YOU AGREE TO COMPLY WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT. PROVIDED THAT YOU ARE NOT IN DEFAULT UNDER THE AGREEMENT, YOU WILL HAVE THE OPTION TO UPGRADE THE EQUIPMENT INTO A NEW AGREEMENT. THE BALANCE DUE ON THIS AGREEMENT WILL BE REFINANCED INTO A NEW AGREEMENT WITH SUCH BALANCE DETERMINED BY US BUT NOT TO INCLUDE AN EARLY TERMINATION PENALTY. THE UPGRADE REQUEST WILL ALSO BE SUBJECT TO YOU ACQUIRING THE NEW EQUIPMENT FROM COPIERS NORTHWEST, INC. AND SUBJECT TO OUR CREDIT APPROVAL. YOU AGREE THAT THE EQUIPMENT WILL BE USED FOR BUSINESS PURPOSES ONLY AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

YOU CERTIFY THAT ALL THE INFORMATION GIVEN IN THIS AGREEMENT AND YOUR APPLICATION WAS CORRECT AND COMPLETE WHEN THIS AGREEMENT WAS SIGNED. THIS AGREEMENT IS NOT BINDING UPON US OR EFFECTIVE UNTIL AND UNLESS WE EXECUTE THIS AGREEMENT. THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE WHERE OWNER HAS ACCEPTED AND EXECUTED THIS AGREEMENT. YOU AGREE TO THE JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS LOCATED WHERE THIS AGREEMENT IS ACCEPTED AND EXECUTED BY OWNER.

ACCEPTED BY:
____ (Legal Name)
BY: ____ (Signature of Authorized Signer)
TITLE: ____ (Print Name and Title)
DATE: ____

CUSTOMER: Zumobi, Inc. (Legal Name)
BY: X ____ (Signature of Authorized Signer)
TITLE: VP Finance, Lara Rickard (Print Name and Title)
DATE: 6/27/13    FED TAX ID#: ████

**UNCONDITIONAL GUARANTY**
In consideration of Owner entering into the above Agreement in reliance on this guaranty, the undersigned, together and separately, unconditionally and irrevocably guarantee to Owner, its successors and assigns, the prompt payment and performance of all obligations under this Agreement. We agree that (a) this is a guaranty of payment and not of collection, and that Owner can proceed directly against us without disposing of any security or seeking to collect from Customer, (b) we waive all defenses and notices, including those of protest, presentment and demand, (c) Owner may renew, extend or otherwise change the terms of the Agreement without notice to us and we will be bound by such changes and (d) we will pay all of Owner's costs of enforcement and collection. This guaranty survives the bankruptcy of Customer and binds our administrators, successors and assigns. Our obligations under this guaranty continue even if Customer becomes insolvent or bankrupt or is discharged from bankruptcy and we agree not to seek to be repaid by Customer in the event we must pay Owner. THIS GUARANTY WILL BE GOVERNED BY THE SAME STATE LAW AS THE AGREEMENT. WE AGREE TO JURISDICTION AND VENUE IN THE STATE AND FEDERAL COURTS IN THE SAME STATE AND COUNTY.

PERSONAL:
By: ____, Individually
Address: ____
Social Security Number: ____
Witness: ____

PERSONAL:
By: ____, Individually
Address: ____
Social Security Number: ____
Witness: ____

TERMS AND CONDITIONS

1. AGREEMENT. Copiers Northwest, Inc. (CNW) has agreed to provide FULL SERVICE AND SUPPLY MAINTENANCE DURING NORMAL BUSINESS HOURS, INCLUDING ALL TONER (EXCEPT FOR FAXES AND WIDE FORMAT DEVICES), DEVELOPER AND PARTS NECESSARY TO PRODUCE COPIES. YOU MUST PURCHASE PAPER AND STAPLES, IF APPLICABLE, SEPARATELY.

2. MAINTENANCE. Program Agreement service covers normal wear and tear on the Equipment. You agree to provide adequate power for the Equipment. You acknowledge that (a) we are not responsible for any service, repair, or maintenance of the Equipment, and (b) we are not a party to any maintenance service agreement. You agree to provide meter readings at the request of CNW. You agree to pay for maintenance service outside of CNW's normal business hours or service required by your negligence or misuse of the Equipment at the CNW's customary rates. Connected products (peripherals) of any type are not included with this Agreement unless customer has selected connection monthly base fee. ONCE WE ACCEPT THIS AGREEMENT, YOU MAY NOT CANCEL AT ANY TIME DURING THE TERM. You agree to be bound by all the terms of this Agreement.

3. DELIVERY AND ACCEPTANCE OF EQUIPMENT: Acceptance of the Equipment occurs upon delivery. This lease commences upon delivery of the Equipment to you. When you receive the Equipment, you agree to inspect it and to verify by telephone or in writing such information as we may require. Delivery and installation costs are your responsibility. If you have signed a purchase contract for the Equipment, by signing this Agreement you assign your rights, but none of your obligations under it, to us. As you will have possession of the Equipment from the time of its delivery and acceptance, if We accept and sign this Agreement You will pay us interim rent for the period from the date the Equipment is delivered and accepted by You until the Commencement Date. The payment for this interim period will be based on the Minimum Monthly Payment, the number of days in that period, and based on a month of 30 days.

4. COPY CHARGES. Each month during the Term of this Agreement, you agree to pay us the applicable Minimum Monthly Payment (plus applicable taxes) for each unit of Equipment on the date we tell you. In return for the Minimum Monthly Payment you are entitled to use the Minimum Number of Copies each month. You also agree to pay us the Excess Per Copy Charge for each metered copy which exceeds the Minimum Number of Copies (plus applicable taxes). We may estimate the number of copies used if you do not provide us with meter readings within seven (7) days of request. We will adjust the estimated charge for excess copies upon receipt of actual meter readings. Notwithstanding any adjustments, you will never pay less that the Minimum Monthly Payment. You agree that we may increase the Minimum Monthly Payment and /or Excess Per Copy Charge each year during the Term of this Agreement by an amount not to exceed seven percent (7%) of the Minimum Monthly Payment, and/or the Excess Per Copy Charge in effect at the end of the prior annual period, or the maximum percentage permitted by law, whichever is lower. At our option you will (a) provide us by telephone or facsimile the actual meter reading when requested by us, (b) allow us (or our agent) access to the Equipment to obtain meter reading, or (c) allow us (or our agent) to attach an automatic meter reading device to the Equipment. We may audit the automatic reading device periodically.

The Minimum Monthly Payment is due whether or not you receive an invoice from us. If you have a dispute with us regarding the Equipment, you will continue to pay us all Minimum Monthly Payments and Excess Per Copy Charges without deduction or withholding any amounts. You will pay us any required Advance Payment or Security Deposit when you sign this Agreement. Security Deposits and Advance Payments may be commingled and do not earn interest. Provided you are not in default, we may apply your Security Deposit to the last Minimum Monthly Payment or we may refund the Security Deposit to you when the Term expires and the Equipment is returned in accordance with Section 17. If we collect more than one payment as Advance Payment, we may apply such Advance Payment to the Minimum Monthly Payment(s) due at the end of the Term. Restrictive endorsements on checks you send to us will not reduce your obligations to us. Unless a proper exemption certificate is provided, applicable sales and use taxes will be added to the Minimum Monthly Payments and Excess Per Copy Charges.

5. UNCONDITIONAL OBLIGATION. YOU AGREE THAT YOU ARE UNCONDITIONALLY OBLIGATED TO PAY ALL MINIMUM MONTHLY PAYMENTS DUE UNDER THIS AGREEMENT AND ANY OTHER AMOUNTS DUE FOR THE FULL TERM, EVEN IF THE EQUIPMENT IS DAMAGED OR DESTROYED, IF IT IS DEFECTIVE OR IF YOU HAVE TEMPORARY OR PERMANENT LOSS OF ITS USE. YOU ARE NOT ENTITLED TO REDUCE OR SET-OFF AGAINST MINIMUM MONTHLY PAYMENTS OR OTHER AMOUNTS DUE UNDER THIS AGREEMENT FOR ANY REASON WHATSOEVER.

6. DISCLAIMER OF WARRANTIES. THE EQUIPMENT IS BEING PROVIDED TO YOU IN AS-IS CONDITION. NO INDIVIDUAL IS AUTHORIZED TO CHANGE ANY PROVISION OF THIS AGREEMENT. YOU AGREE THAT WE HAVE NOT MANUFACTURED THE EQUIPMENT AND THAT YOU HAVE SELECTED THE EQUIPMENT BASED UPON YOUR OWN JUDGEMENT. YOU HAVE NOT RELIED ON ANY STATEMENTS WE OR OUR EMPLOYEES HAVE MADE. WE HAVE NOT MADE AND DO NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE EQUIPMENT'S MERCHANTABLITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, DESIGN, CONDITION, DURABILITY, OPERATION, QUALITY OF MATERIALS OR WORKMANSHIP, OR COMPLIANCE WITH SPECIFICATIONS OR APPLICABLE LAW. You are aware of the name of the Equipment manufacturer and you will contact the manufacturer for a description of your warranty rights. Provided you are not in default under this Agreement, you may enforce all warranty rights directly against the manufacturer of the Equipment. You agree to settle any dispute you may have regarding performance of the Equipment directly with the supplier.

7. TITLE. The Equipment is and shall remain our sole property.

8. USE, MAINTENANCE AND REPAIR. You will not move the Equipment from the Equipment Location without our advance written consent. If we grant you written permission to relocate the Equipment to a new Equipment Location, any maintenance, service and supply costs which may be included in the Minimum Monthly Payment or any Excess Per Copy Charges, may be increased by us at our sole discretion. You will give us reasonable access to the Equipment Location so that we can check the Equipment's existence, condition and proper maintenance. You will use the Equipment in the manner for which it was intended, as required by all manuals and instructions and keep it eligible for any manufacturer's certifications. You will keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted. All replacement parts and repairs will become our property. You will not make any permanent alterations to the Equipment.

9. TAXES. You agree to pay when due all sales and use taxes, personal property and all other taxes and charges, license and registration fees, relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment as part of this Lease or as billed by us. You agree to pay us any estimated property taxes when we request payment. You agree that if we pay any taxes or charges on your behalf in excess of the estimated taxes previously collected, you shall reimburse us for all such payments and shall pay us a late charge (as described in the paragraph titled Collection Expenses, Overdue Payment) on such payments if applicable with the next payment. You agree to pay us a monthly fee or an annual fee if billed annually, to reimburse us for our costs of preparing, reviewing and filing any such returns. You agree, and we have the right to (i) bill monthly or annually the estimated applicable personal property taxes together with the fees described herein and (ii) bill any remaining estimated amount due upon assessment of such taxes. Your estimated monthly payment will be based on the full amount of such taxes, without regard to any discounts we may obtain. You also agree to appoint us a your attorney-in-fact to sign your name to any document for the purpose of such filing, so long as the filing does not interfere with your right to use.

10. INDEMNITY. We are not responsible for any injuries, damages, penalties, claims or losses, including legal expenses, incurred by you or any other person caused by the transportation, installation, manufacture, selection, purchase, agreement, ownership, possession, modification, maintenance, condition, operation, use, return or disposition of the Equipment. You agree to reimburse us for and defend us against any claims for such losses, damages, penalties, claims, injuries, or expenses. This indemnity continues even after the Agreement has expired for acts of omissions which occurred during the Terms of this Agreement.

11. IDENTIFICATION. You authorize us to insert or correct missing information on this Agreement, including your official name, serial numbers and any other information describing the Equipment. We will send you copies of such changes. You will attach to the Equipment any name plates or stickers we provide you.

12. LOSS OR DAMAGE. You are responsible for any loss of the Equipment from any cause at all whether or not insured, from the time the Equipment is shipped to you until it is returned to us. If any item or Equipment is lost, stolen or damaged, you will promptly notify us of such event. Then, at our option, you will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, or (b) pay us an amount equal to the Net Book Value (as defined in Section 15) of the lost, stolen or damaged Equipment. If you have satisfied your obligations under this Section 12, we will forward to you any insurance proceeds which we receive for lost, damaged, or destroyed Equipment. If you are in default, we will apply any insurance proceeds we receive to reduce your obligations under Section 15 of this Agreement.

13. INSURANCE. You agree to keep the Equipment fully insured against loss with us as loss payee, and (b) obtain a general public liability insurance policy covering both personal injury and property damage in amounts not less than we may tell you, naming us as additional insured, until you have met all of your obligations under this Agreement. We are under no duty to tell you if your insurance coverage is adequate. The policies shall state that we are to be notified of any proposed cancellation at least 15 days prior to the date set for cancellation. Upon our request, you agree to provide us with certificates or other evidence of insurance acceptable to us. If you do not provide us with evidence of proper insurance within 10 days of our request or we receive notice of policy cancellation, we may (but we are not obligated to) obtain insurance on our interest in the Equipment at your expense. If we do, we may charge you a monthly charge due to the increased credit risk to us as well as to cover our increased internal overhead costs of requesting proof of physical damage insurance from you in the event that we obtain insurance as stated above, you will pay all insurance premiums and related charges.

14. DEFAULT. You will be in default under this Agreement if any of the following happens: (a) we do not receive any Monthly Minimum Payment and Excess Per Copy Charges or other payment due hereunder within 10 days after its due date, or (b) you or any of your guarantors become insolvent, are liquidated or dissolved, merge, transfer substantially all stock or assets, stop doing business, or assign rights or property for the benefit of creditors, or (c) a petition is filed by or against you or any of your guarantors under any bankruptcy or insolvency law, or (d) (for individuals) you or any of your guarantors die, or have a guardian appointed, or (e) any representation you have made in this Agreement shall prove to have been false or misleading in any material respect, or (f) you or any of your guarantors break any promise made in this Agreement or any guaranty and do not correct the default within 10 days after we send you written notice of the default, or (g) you default on any other Agreement between you and us (or our affiliates).

15. REMEDIES. Upon the occurrence of a default, we may, in our sole discretion, do any or all of the following (a) provide written notice to you of default; (b) as liquidated damages for loss of a bargain and not as a penalty, declare due and payable, the present value of (i) any and all amounts which may be then due and payable by you to us under this Agreement, plus (ii) all Minimum Monthly Payments remaining through the end of the Term, discounted at the higher of 6% or the lowest rate allowed by law, plus (iii) the fair market value of the Equipment (collectively, the "Net Book Value"). We have the right to require you to make the Equipment available to us for repossession during reasonable business hours or we may repossess the Equipment, so long as we do not breach the peace in doing so, or we may use legal process in compliance with applicable law pursuant to court order to have the Equipment repossessed. You will not make any claims against us or the Equipment for trespass, damage or any other reason. If we take possession of the Equipment we may (a) sell or lease the Equipment at public or private sales or lease, and/or (b) exercise such other rights as may be allowed by applicable law. Although you agree we have no obligation to sell the Equipment, if we do sell the Equipment, we will reduce the Net Book Value by the amounts we receive. You will immediately pay us the remaining Net Book Value. You agree (a) that we only need to give you 10 days advance notice of any sale and no notice of advertising (b) to pay all of the costs we incur to enforce our rights against you, including attorney's fees, and (c) that we will retain all of our rights against you even if we do not choose to enforce them at the time of your default.

16. YOUR OPTIONS AT END OF TERM. No more than ninety (90) days but not less than thirty (30) days prior to the expiration of the Term or any Renewal Term (as such term is defined below), you shall give us written notice of your intention at the end of the Term or such Renewal Term to either (a) continue paying Minimum Monthly Payments and Excess Per Copy Charges until the Equipment is received and accepted by us pursuant to Section 17, or (b) return the Equipment to us at the end of the Term or Renewal Term pursuant to Section 17. If you fail to provide us with written notice in the time frame referenced above, or having notified us, you fail to return the Equipment in accordance with Section 17, the Term of this Agreement shall automatically renew for an additional twelve (12) months (each, a "Renewal Term") and all of the provisions of this Agreement shall continue to apply, including your obligation to pay the Minimum Monthly Payments and Excess Per Copy Charges. We reserve the right to limit the number of Renewal Terms available to you.

17. RETURN OF EQUIPMENT. CNW will pick up Equipment at your location at the end of the term or at the time of upgrade in accordance with Section 26, provided the Equipment is located within CNW's service area. If (a) a default occurs, or (b) if the Equipment is not located within CNW's service area, you will immediately return the Equipment to any location(s) and aboard any carrier(s) we may designate in the continental United States. The Equipment must be properly packed for shipment with the manufacturer's recommendations or specifications, freight prepaid and insured, maintained in accordance with Section 8, and in "Average Saleable Condition." "Average Saleable Condition" means that all of the Equipment is immediately available for use by a third party buyer, user or lessee, other than yourself, without the need for any repair or refurbishment. All Equipment must be free of markings. You will pay us for any missing or defective parts or accessories. You will continue to pay Minimum Monthly Payments and Excess Per Copy Charges until the Equipment is received and accepted by us.

18. YOUR REPRESENTATIONS. You state for our benefit that as of the date of this Agreement (a) you have the lawful power and authority to enter into this Agreement, (b) the individuals signing this Agreement have been duly authorized to do so on your behalf, (c) by entering into this Agreement you will not violate any law or other Agreement to which you are a party, (d) you are not aware of anything that will have a material negative effect on your ability to satisfy your obligations under this Agreement, and (e) all financial information you have provided us is true and accurate and provides a good representation of your financial condition.

19. YOUR PROMISES. In addition to the other provisions of this Agreement, you agree that during the Term of this Agreement (a) you will promptly notify us in writing if you move your principal place of business, if you change the name of your business, or if there is a change in your ownership, (b) you will provide to us such financial information as we may reasonably request from time to time, and (c) you will take any action we reasonably request to protect our rights in the Equipment and to meet your obligations under this Agreement.

20. ASSIGNMENT. YOU WILL NOT SELL, TRANSFER, ASSIGN, PLEDGE, SUB-AGREEMENT OR PART WITH POSSESSION OF THE EQUIPMENT, OR FILE OR PERMIT A LIEN TO BE FILED AGAINST THE EQUIPMENT. You will not attach any of the Equipment to any real estate. We may, without notifying you, sell, assign, or transfer this Agreement and our interests in the Equipment. You agree that if we do so the new owner (and any subsequent owners) will have the same rights and benefits that we now have, but will not have to perform any of our obligations. You agree that the rights of the new owner will not be subject to any claims, defenses, or set-offs that you may have against us. However, any such assignment, sale, or transfer of this Agreement of the Equipment will not relieve us of any obligations we may have to you under this Agreement. If you are given notice of a new owner of this Agreement, you agree to respond to any requests about this Agreement and to pay the new owner all Minimum Monthly Payments and Excess Per Copy Charges and other amounts due under this Agreement.

21. COLLECTION EXPENSES, OVERDUE PAYMENT, TERMINATION. You agree that we can, but do not have to, take on your behalf any action which you fail to take as required by this Agreement, and our expenses will be in addition to the Minimum Monthly Payments and Excess Per Copy Charges which you owe us. We may charge you a late charge to cover our collection costs equal to the higher of 10% of any late payment or $22, but not more than the highest legal rate. To the extent allowed by law, any late payment or non-payment of any past due amount will accrue interest at the lower of 18% per annum or the highest legal rate from the due date until paid. If you so request and we permit the early termination of this Agreement, you agree to pay a fee for such privilege.

22. MISCELLANEOUS. This Agreement contains our entire Agreement and supersedes any conflicting provision of any Equipment purchase order or any other Agreement. TIME IS OF THE ESSENCE IN THIS AGREEMENT. If a court finds any provision of this Agreement to be unenforceable, the remaining terms of this Agreement shall remain in effect. You authorize us (or our agent) to (a) obtain credit reports, (b) make such other credit inquiries as we may deem necessary, and (c) furnish payment history information to credit reporting agencies. To the extent permitted by law, we may charge you a fee of up to $79.00 to cover our documentation and investigation costs.

23. NOTICES. All of your written notices to us must be sent by certified mail or recognized overnight delivery service, postage prepaid, to us at our address stated in this Agreement, or by facsimile transmission to our facsimile telephone number, with oral confirmation of receipt. All of our notices to you may be sent first class mail, postage prepaid, to your address stated in this Agreement. At any time after this Agreement is signed, you or we may change an address or facsimile telephone number by giving notice to the other of the change.

24. WAIVERS. WE AND YOU EACH AGREE TO WAIVE AND TO TAKE ALL REQUIRED STEPS TO WAIVE ALL RIGHTS TO A JURY TRIAL. To the extent you are permitted by applicable law, you waive all rights and remedies conferred upon a lessee by Article 2A (Sections 508-522) of the Uniform Commercial Code including but not limited to your rights to: (a) cancel or repudiate this Agreement, (b) reject or revoke acceptance of the Equipment; (c) recover damages from us for any breach of warranty or for any other reason; and (d) grant a security interest in any Equipment in your possession. To the extent you are permitted by applicable law, you waive any rights you now or later may have under any statute or otherwise which require us to sell or otherwise use any Equipment to reduce our damages, which require us to provide you with notice of default, intent to accelerate amounts becoming due, or acceleration of amounts becoming due, or which may otherwise limit or modify any of our rights or remedies. ANY ACTION YOU TAKE AGAINST US FOR ANY DEFAULT, INCLUDING BREACH OF WARRANTY OR INDEMNITY, MUST BE STARTED WITHIN ONE (1) YEAR AFTER THE EVENT WHICH CAUSED IT. We will not be liable for specific performance of this Agreement or for any losses, damages, delay or failure to deliver Equipment.

25. UCC FILINGS. You grant us a security interest in the Equipment if this Agreement is deemed a secured transaction and you authorize us to record a UCC-1 financing statement or similar instrument, and appoint us your attorney-in-fact to execute and deliver such instrument, in order to show our interest in the Equipment.

26. UPGRADE OPTION. You may upgrade any item of Equipment provided (a) at least 30 days prior to such upgrades, you notify us in writing of your intention to upgrade the Equipment and the serial number of each item of Equipment to be upgraded, (b) we credit approve the new transaction, (c) we and you sign a new Program Agreement covering the new Equipment, (d) the new Equipment is acquired from Copiers Northwest, Inc., (e) you return the upgraded item(s) of Equipment to us in accordance with Section 17 of this Agreement, and (f) no default shall have occurred under this Agreement.

Rev 5/1/09

INITIALS _____

# Payoff Invoice



*Wells Fargo Equipment Finance | PO Box 10306 | Des Moines, IA 50306-0306*

| | | | |
|---|---|---|---|
| Date: | September 3, 2019 | | |
| Company: | Zumobi, Inc. | Customer Name: | Zumobi, Inc. |
| Phone No.: | (000) 000 - 0000 | Contract No: | 603-0156851-000 |
| Fax No.: | (000) 000 - 0000 | Effective Date: | 10/03/2019 |
| Email: | leasing@copiersnw.com | | |
| | | | |
| From: | Mahagony Shaffer | **Total Payoff Amount\*:** | **$1,820.17** |
| Phone No.: | (866) 497 - 6664 | \*This payoff assumes no additional payments will be made | |
| Fax No.: | (800) 826 - 1005 | | |
| E-Mail: | buyout@financialservicing.net | | |

**For immediate release of Title or UCC amendment authorization, payment must be received in the form of a certified check or wired funds. All other forms of payment will have a 10 business day hold prior to release. If Wells Fargo Equipment Leasing, Inc. is listed on the title(s) as owner of the equipment we will reassign the title to whomever remits the funds. Please provide detailed release instructions including the physical address and phone number to ensure timely processing and delivery of your documents. The Total Payoff(s) is subject to final verification upon receipt of funds. Following verification, Wells Fargo Equipment Leasing, Inc. agrees to release its security interest in the collateral listed.**

| **Overnight Mailing Instructions:** | **Wire Instructions (Pay without Delay):** | **Standard Mailing Instructions:** |
|---|---|---|
| Wells Fargo Equipment Leasing, Inc.<br>Lockbox Services 310708<br>Wells Fargo Financial Leasing, Inc.<br>666 Walnut St. Ste. 700<br>Des Moines, IA 50309 | Wells Fargo Bank<br>Acct Name: Wells Fargo Financial Leasing, Inc<br>666 Walnut St<br>Des Moines IA 50309<br>ABA # 121000248<br>Acct # 4100053040 | Wells Fargo Equipment Leasing, Inc.<br>Wells Fargo Financial Leasing, Inc.<br>PO Box 310708<br>Des Moines, IA 50331-0708 |
| **Please reference contract # on Customer's wire transfer to ensure it is applied properly.** | | |

*This telecopy is for use by the person to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone, and return the original message to us at the above address via U.S. Postal Service. Thank you.*

© 2019 Wells Fargo Bank, N.A. All rights reserved. Wells Fargo Equipment Finance is the trade name for certain equipment leasing and finance businesses of Wells Fargo Bank, N.A. and its subsidiaries.

**Equipment Schedule**

| Contract Number | Asset Number | Year | Make | Model | Serial Number | Description |
|---|---|---|---|---|---|---|
| 603-0156851-000 | 2597571 | 2016 | LEXMARK | XM3150 | 70166PHH09C4L | Copier |